The final case on our call this morning is Agenda No. 5, Case No. 106-683, People of the State of Illinois's Appalachia v. Ralph Hopkins, Appalachia. Counsel, if you'd introduce yourself to us, you may proceed. Thank you. Your Honor, Counsel, my name is Doug Hoff. I'm with the State Appellate Defenders, and I'm representing Mr. Ralph Hopkins in this manner. May it please the Court, the important thing about this case right now is to be mindful of what is actually before the Court. Mr. Hopkins has already established that he was arrested without probable cause in violation of the Fourth Amendment. That issue was decided and decided over three years ago in Hopkins I in the Appellate Court. There are no grounds for revisiting that today or advancing a new factual scenario about when Mr. Hopkins was actually arrested as the State attempts to do in this Court. The question before the Court right now is whether the Appellate Court in Hopkins II properly found attenuation between the illegal arrest and Hopkins statement. The Appellate Court's decision was erroneous. The facts from the attenuation hearing are actually very clear. After the illegal arrest, the police interrogated Hopkins repeatedly, and he refused to implicate himself in the Hedge Act attempt to robbery until being confronted with Samson's statement. The interrogating officers lied to Mr. Hopkins, telling him he no longer needed him to confess, suggesting that he could be convicted based upon Samson's statement, which is, of course, false under Bruton. Codefendant's statements are not admissible. So the question is, is this confrontation an intervening cause that breaks the chain of causation between the illegal arrest and his statement? No, this is interrogation. This is an exploitation of the illegal arrest. This is not something else. This is convincing a suspect that continued denial is hopeless is a recognized method of interrogation, and in this case is an exploitation of the illegal arrest. Now, in Kalp, the U.S. Supreme Court faced a similar situation where the defendant had been arrested illegally and confronted with his brother's inculpatory statement, and the Kalp Court found that that was not attenuating. And this goes also back to Taylor, where the U.S. Supreme Court found that the defendant had been illegally arrested and confronted him with fingerprints on some items that were supposedly involved in the robbery for which he was arrested. Again, this confrontation with evidence was not an attenuating fact. And in Franklin, this court found that a polygraph test and a confrontation with the results of that polygraph test was not attenuating because it was a form of interrogation and an exploitation of the illegal arrest. Franklin is also actually useful in this case and relevant to this case in another regard, in that the state in Franklin, like the state here, attempted to change its factual theory about when the defendant was arrested, and the Franklin Court refused to allow them to do so. And also we have Johnson, which he was confronted with ballistics results, again, to get the defendant to confess, to convince him that it was useless to continue to deny involvement, and again, this court found that it was not attenuating. Interrogation is not attenuation, no matter what method the police use. A polygraph or a confrontation with evidence doesn't break the causal chain between the arrest and the statement. And here the record is clear. The only supposedly intervening event was the confrontation with Samson's statement, which is not intervening. It doesn't break the causation. It is an exploitation of the illegal arrest. Therefore, the appellate court erred in finding attenuation. But assuming that some forms of interrogation can be used for attenuation, the state has a burden of proving essentially clean hands. They have to prove that whatever evidence they use to try to establish attenuation is actually untainted by illegality. The standard is clear and convincing? The standard is clear and convincing, yes, Your Honor. They have to prove by clear and convincing evidence that this is untainted by illegality, which they did not even attempt to do in this case. And the purpose of the exclusionary rule is to deter police misconduct by depriving the state of the fruits of that misconduct. Essentially, if you allow illegally obtained evidence to establish the admissibility of other evidence that resulted from an illegality, you're actually encouraging more police misconduct rather than deterring it. And you're talking about Samson's statement? Samson's statement, yes. And you're saying that the state had some obligation to show that the statement of Samson was obtained illegally? Yeah, legally. Legally, yes. And that's even in the face of the fact that Samson pled guilty and never challenged the legality of that statement? Yes, this is true. So with respect to Samson themselves, they would have no opportunity to, or no necessity, let me put it that way, to show that the statement was legal because he pled guilty and never challenged the statement himself. But in this case, the fact that the defendant was confronted with Samson's statement would require the state to go back and prove that the Samson statement was obtained legally? Correct. Because, I mean, obviously Samson pled guilty. He was offered a plea bargain. He pled guilty. He waived any challenge to the admissibility of his statement. Now, this guilty plea doesn't somehow indicate that his statement was valid. It only indicates that, you know, for his own reasons, he determined that, you know, to take this plea bargain was better than to risk whatever outcomes from a motion hearing or a trial. It's a question of standing as well, isn't it? Standing is actually, it was mentioned in the appellate court, and the state raises the question of standing. But standing is actually only an issue when you have a defendant whose own rights have not been violated. The Jaynes case that this court decided involved a defendant who was arrested legally and then attempted to point to the illegality of a co-defendant's statement as grounds for suppressing his own statement. And this court said that because the defendant himself had no constitutional violation to point to of his own rights, that he did not have standing to litigate these other matters. Now, in this case, obviously Mr. Hopkins has established that he was illegally arrested. So then the burden shifts to the state to show the legally acquired evidence that supposedly attenuated this. But isn't there a lot of authority that a defendant can't seek to take advantage of the alleged violation of somebody else's constitutional rights? Well, it's certainly not a matter of Mr. Hopkins taking advantage of another constitutional violation by somebody else. It is a matter of his own rights were violated, and now for the purposes of the exclusionary rule, which are to deter this kind of misconduct, the state can only use legally acquired evidence. Now, there's a long line of appellate court cases. There's Avery. There's Austin. There's Clay. There's these other cases where you actually have already have findings that the co-defendant's statement was illegally obtained. And the appellate court has said repeatedly that because the statement was, the co-defendant's statement was illegally obtained, it cannot be used for attenuation with the defendants. Now, the distinguishing fact here, the only, I think it's a distinction without a difference, is that we don't have that finding yet, rather than in these other cases where there was some finding, where like in Clay, there was a finding that the co-defendant had been beaten up to give his statement. And then the state wanted to use that statement, that co-defendant's statement that was found to be coerced, to establish the admissibility of Clay's statement, because Clay gave his statement after he was confronted with the co-defendant's statement. And the appellate court rightfully said, you know, you can't wash your hands in dirty water. You can't cleanse the illegality of one statement by the use of illegal evidence from another case. Now, here, if Samson was legally arrested and his statement was legally acquired, which we don't know. Can I just, the argument has been made, at least in the briefs, that Samson can be viewed as somebody who was arrested without probable cause because he was arrested at the same time as the defendant. I think there's a suggestion from this record that Would you agree, though, that that would not establish that particular fact? Our current record from Mr. Hopkins' case? No, the issue of whether or not the co-defendant was arrested without probable cause. The mere fact that he was arrested with a defendant who has been shown to have been arrested without probable cause doesn't mean that the same facts apply to him. Hopkins was arrested alone. Right. So Samson was arrested elsewhere. The record doesn't reflect exactly where. But, no, the finding with regards to probable cause on Hopkins does not establish the lack of probable cause from Samson because we don't have enough of a record at that point. But we do know a number of things. We do know that Samson was interrogated by the same detectives who interrogated Hopkins. We do know that he was brought to the scene by his arresting officer, which was Hudziak. So, essentially, if the state could prove that his statement was legally acquired to Hopkins' attenuation hearing, they just had to ask Detectives Quigley and McGuire the same questions that they asked them regarding Mr. Hopkins. And they would bring in, additionally, just one more witness, which would be Hudziak, which would go to the question of probable cause. Why does this appeal not bring the probable cause issue back before the court? I know your position is that was addressed in Hopkins 1, the state didn't appeal, so they're precluded from bringing the probable cause issue. I mean, I think you even said this court doesn't have jurisdiction to hear it, which I'm not so sure we don't have jurisdiction to hear it. But whether it's properly before us is another situation. This court can affirm on any basis, right? So you come in and you say the court was, there's an attenuation problem here. Why can't they bring up the probable cause and say, well, not only did the court have the right finding with respect to attenuation, but they had the wrong finding with respect to probable cause? Well, certainly the court can, the court reviews judgments, and the court can affirm those judgments on any grounds. The judgment that actually is before the court is the one regarding attenuation. Obviously, this court is the judge of its own jurisdiction, and there certainly have been cases in the past where the court has reviewed judgments from previous appeals involving the same case. And generally, if you look at those cases, there was some rationale for doing so. But in this case... And you would agree that if we disagreed with both you and the appellate court on probable cause, I mean, the state would say there's no reason to go to attenuation, right? If the arrest was legal, you never get to attenuation. But here, I think the concern regarding finality of judgments, of not having the sort of, you know, that as litigation proceeds, you presume that the issue is actually narrow, that something is actually accomplished. But here, if we do, and I think there are good reasons here for not going back to the probable cause finding, because it sort of displays the risks of keeping every issue open wide all the time. Is there a law of the case issue that might apply here? There's certainly the law of the case is relevant to this concern matter we raised in our briefs. I would personally focus more on waiver with regards to the... Waiver or forfeiture? Forfeiture. Actually, I would say waiver. Waiver... Forfeiture is simple inaction. Waiver is affirmatively deciding not to proceed. And in this case, waiver in affirmatively not only not filing a petition for leave to appeal to this court from Hopkins 1, but also even file a rehearing petition in the appellate court. We have something else going on here, though, too, right? Hopkins 1 finds no probable cause but sends back for an attenuation hearing. Correct. The state may at that point feel, if they prevail on the attenuation, why appeal the Hopkins 1 decision on probable cause? We're going back for an attenuation hearing. If we prevail on the attenuation hearing, we can go forward and can always appeal the probable cause issue if, indeed, the defendant takes issue with the trial court's attenuation analysis. Perhaps that was their thinking in this case. But, again, do you want to encourage that? Do you want to encourage, you know, from their point of view, the probable cause finding was incorrect? So they're sitting on their hands and letting the court remand for what they would consider to be a useless attenuation hearing. It would be a waste of everybody's time because, according to them, there is a probable cause. But you can see where they could make the same argument. The judicial economy would preclude it. Why should we appeal something where we can prevail back at the trial court at this hearing? And then a defendant can make a choice. I mean, I just think that argument goes both ways. I think actually one of the things in this case that really shows some of the risks of allowing this sort of procedure to progress is that the state now, because it wants to reopen the probable cause issue, also wants to reopen not just Hopkins 1 but also the trial court's findings from the motion to quash hearing. It's taking issue with the trial court's finding that Mr. Hopkins was arrested when he was ordered from the car, patted down, and was handcuffed. They want this court to set aside that factual finding by the circuit court from the motion to quash hearing and find that he wasn't actually arrested until later, until after the show-up. So keeping this matter, I guess, in play means that we give the litigants this time to, I guess, flip-flop on their theories of the case. And again, it turns out not only is Hopkins 2 kind of pointless, Hopkins 1 was even erroneously resolved. So I think letting them revisit that at this point is fundamentally contrary to the whole idea that as litigation proceeds, there should be some things that are resolved. I mean, things moved to a very narrow point in this case where you had a remand for an attenuation hearing that was to focus primarily on a single fact, the intervening causes, and other things that weren't yet exposed by the record. In fact, wasn't the remand or wasn't the understanding that the remand was for one cause and that was whether Sampson's confession had been used to, had been shown to the defendant in this case and that even defense counsel agreed at the time of the hearing that that was the sole factor, but now you are bringing up the entire panoply of factors in an attenuation hearing? Well, there was certainly a, you know, the language in the appellate court was that we're remanding for this specific question. And they also stated that there could be other things that the record did not reveal that, you know, related matters that would be relevant to the question here. Well, the one specific thing, we're not raising the entire panoply. We're specifically wanting additional discussion on the question of flagrant police misconduct because it is related to the intervening cause. You look at the police conduct as a whole, particularly in this case where you have the police pretending with Mr. Hopkins that they don't need him to confess because they have Sampson's statement, because they have him due to Sampson's statement. Now, this is related to the entire sort of sphere of police misconduct. So we felt that since it was so closely related to that one particular factor, that this court should take a look at it in its entirety. But we certainly are not attempting to open up matters that were decided in Hopkins I because, I mean, the court disposed of Hopkins I. We had an excessive sentencing argument. We had a prosecutorial misconduct argument. We certainly weren't trying to reopen those this time. So, frankly, this court should find that these matters have been fully previously litigated, have previously decided, and should certainly find that the state cannot now completely change its position regarding the motion to quash hearing. The state below had argued that Mr. Hopkins was arrested when he was taken from the vehicle and handcuffed. That is what the circuit court found. In fact, the prosecution in this case didn't even introduce the results of the show-up. Now they're saying he wasn't arrested until after the show-up. Well, why didn't they introduce the results of the show-up at the motion to quash hearing? And clearly that would have been relevant to probable cause, but they didn't even try to introduce it at that hearing. And, again, they argued it in the appellate court that he was arrested at that point and did not argue this new theory that they're bringing before the court now. So I think the fact of keeping things open indefinitely really poses this serious risk that as the litigation proceeds, instead of getting narrower, you're providing both parties, really, with the opportunity to just refine new theories, come up with new facts, and essentially indicating that the case hasn't made any progress by the time it gets to this court. If there are any further questions, thank you. May it please the Court, Chief Justice, Honorable Justices, Counsel, my name is Claire Wessel-Econnelly and I am an Assistant State's Attorney for Cook County and I represent the people of the State of Illinois. On a snowy evening in December of 2000, the victim, Beverly Hajek, and her two children were out taking a walk with their dog when at that point the defendant and the co-defendant, Jeffrey Sampson, approached them, armed with a gun, and demanded money from her. After they attempted to rob her, the victim quickly flagged down a passing motorist and that passing motorist called 911. Within two minutes of receiving a radio dispatch, including a description of two male blacks in their 20s, armed with a gun and running eastbound on foot, Officer Scott O'Neill of the Oklahoma Police Department responded to that scene. When he got to the scene, he was able to view the area for several blocks. For those several blocks, all he saw was one parked car with its headlights on and that car was parked within one block of the reported robbery. He did not see one other person in the area. Now Officer O'Neill decided to pull alongside that car. He waited for approximately 20 seconds, looked inside the car. He could tell that there was a person inside the car, could not determine whether or not that person was male or female. As the officer turned left, this parked car turned in the opposite direction, away from the officer. As they were both making their turns, Officer O'Neill made eye contact with the driver and the driver of that car was the defendant in this case. At that point, the driver, the defendant, quickly threw himself back in the seat in an attempt to hide from the officer. The officer made a U-turn and curbed the vehicle. Because the report described the offenders as armed, Officer O'Neill approached the car with his weapon drawn and ordered the defendant out of the car. He noticed when the defendant got out of the car that he had fresh snow on his shoes and on his pant legs up to his mid-calf. He put his gun away before conducting a pat-down search. During the pat-down, he noted that the defendant was breathing heavily and that his heart was beating rapidly. How many officers were at the scene with their guns drawn at that time? There was, I believe, two officers there with their guns drawn. Another officer had also responded to the scene at that point. Was the fact that guns were pointed at any defendants sufficient to explain away the rapid heartbeat? That is an explanation as to why the defendant's heart was beating rapidly. His heart beating rapidly could also be explained by the fact that he had just run away from the victim and run into the car, and we're seeing that that corroborates the victim's account of the robbers running away. He spawned on foot. Now, within five minutes of the defendant being stopped, the victim arrived in the area and she immediately identified the defendant as one of the offenders. Very soon after this... You mean at the area of the arrest, not in the police area. I'm sorry, in the area of the arrest. And very soon after this, she saw the co-defendant walking down the street and she immediately identified the co-defendant as the other offender involved in this case. Considering the totality of this evidence, certainly probable cause was established after the show-up identification of defendant by the victim. Now, the trial court, upon hearing this evidence, denied the defendant's... When was the defendant handcuffed? I'm sorry? When was the defendant handcuffed? When was he handcuffed? After they had conducted the pat-down search and everything like that, there was a brief struggle with the officer, and after that, then they were able to handcuff the defendant. At the time of the arrest? Well, at the time that he was detained. We're saying that he was... He was not under arrest at that time when he was handcuffed? We're saying that he was not under arrest at that time. He was being detained in order for the victim to appear at the scene, and they did a show-up identification at that time. Both the trial court and the appellate court have held that the handcuffing constituted the time of the arrest. That's correct. And we're saying that this one additional factor that this court can look at, and this is based on the evidence that was introduced at the motion and argued by the... And you agreed with that position both before the trial court and the appellate court? That's correct. We're saying that this is one additional factor that this can look at is the show-up identification of the defendant. But under either scenario, we're saying that probable cause was established in this case. But you're taking the position now that he was not placed under arrest at the time of being handcuffed? That's our main argument, I would say. That's our first argument. Yes, that's correct. Would you like to address the waiver argument of counsel then? Again, what we're asking this court to look at is just one additional factor that was, based on the evidence that was introduced at the trial level, was argued by the assistant state's attorney at the trial level. And regrettably, we did not argue that at the appellate court level. But at this point, we're looking at de novo review. We can look at anything. This court can affirm the defense condition based on the record before it. And we're not constrained by what we may have argued in front of the appellate court or may not have argued in front of the appellate court. Whether we call it waiver or forfeiture, there was nothing known to you now that wasn't known to you at the time of the original hearing. I'm sorry, could you repeat that? Whatever facts you know now, you knew at the time of the original motion to suppress. That's correct. That's correct. Is there any ever a period procedurally when you've lost the right to go forward with further evidence on a matter that's already been litigated? No. I think in this case, when the defendant has brought up the issue of jurisdiction and the waiver and everything, and the Illinois Supreme Court rules that apply to this case is Illinois Supreme Court Rule 318A and 318B. And they say that this court has jurisdiction to hear any matter since the people of the appellate are entitled to raise any claim. The question is really not whether we have jurisdiction, but whether we should relitigate the issue, isn't it? Yeah, that's one of the questions that is raised in this issue. And we are raising an issue that was based on the record before this court. And this court may address any case, the issue in this case, because it constitutes de novo review. The facts regarding the show of identification is based on evidence that was introduced at the trial level. One more question. Sure. If that's the rule, and I'm not delving into whether it is or it is not at this point, wouldn't that make trying cases after a trial and an appeal and a reversal very, very difficult? Do you have to relitigate motions to suppress that were tried? I don't think we're asking you to relitigate an issue. It's already been addressed and all the issues have been. You would like us to take the fact, which I presume is going to be an identification by the witness that has shown up out on the snowy street. Right. Isn't that relitigating the issue? But it's relitigating the issue that's already been addressed. I guess I'm not following your question, but it's already been addressed. It was already addressed in the trial court level. But you want to address it some more. That's correct. Do you have any case law to support that? Not that I've cited to in my briefing. Not outside of the sites, do you? No, Your Honor. The trial court, upon hearing this evidence, denied the defendant's motion to quash, arrest, and suppress evidence. And they found that the officer had reasonable suspicion that the defendant had committed a crime at the time that the stop was made. The trial court also found that probable cause was established after the defendant had exited the car. The defendant also filed a motion to suppress statement in this case, alleging that his confession was obtained as a result of both physical and mental coercion. This motion was denied, and the defendant has never contested the trial court's ruling on that motion. The defendant likewise also filed a motion to suppress his identification. The trial court denied this motion, specifically finding that there's no indication that there was any suggestive conduct by any of the officers and that the officers' actions were appropriate. The defendant has never contested the trial court's ruling on this motion. For the first time on appeal in Hopkins 1, the defendant challenged the trial court's finding of probable cause. The appellate court determined that the police had a sufficient basis to conduct a Terry stop, but that no probable cause existed at the time the defendant was initially arrested. However, the court also found the presence of three out of the four attenuation factors and remanded this cause to determine the existence of one factor, the presence of intervening circumstances. After the trial court concluded on remand that the state had shown the presence of intervening circumstances, defendant appealed this decision, and the appellate court agreed with the trial court's decision that this one factor had been established. If this court chooses to reach the merits of the defendant's attenuation argument, it should affirm the appellate court's determination that each of the attenuation factors have been established. In Brown, the United States Supreme Court identified four factors to consider when determining whether a defendant's subsequent confession following an illegal arrest was sufficiently attenuated from an illegal arrest. The first factor for this court to look at is whether Miranda rights were given. Now, defendant acknowledges in his brief. Counsel, in Hopkins 2, though, the court did not consider all the Brown factors. So should this be considered waived? In Hopkins 2, the court was looking at whether or not the intervening circumstances The presence of intervening circumstances. And that's the only one, not the other. That's correct. Not the other Brown factors. Yes, and one of our contentions is that defendant has waived the consideration of these other issues as a result of the fact that it was only sent back on remand for consideration of the presence of intervening circumstances. As far as the second factor, the amount of time between the defendant's arrest and his subsequent statement, certainly the passage of six hours was a sufficient amount of time to dissipate the taint of the defendant's alleged illegal arrest. Now, the court that was sent back on remand to determine the presence of intervening circumstances. For this prong, the courts have focused their attention on whether the confession was an act of free will sufficient to purge the taint of the illegal arrest. Pursuant to this free will analysis, this court should find that if an intervening circumstance affects a voluntary response from a defendant, it will serve as a sufficient intervening factor for purposes of attenuation. In the present case, defendant exercised his free will when after reading his co-defendant's confession that implicated him in the offense, he decided to confess to his involvement. An analysis of defendant's free will should not be focused on whether the co-defendant's arrest was legal or illegal in this case. The alleged illegality of the co-defendant's arrest in this case did not have any effect on the defendant's decision to exercise his free will. The appellate court relied upon, I can't pronounce this, Klimowitz? Klimowitz or some, however you would like to say it. In this case, in deciding that it was legally, there was no obligation on the part of the state to establish that it was legally abstained. Correct. But isn't that case distinguishable? In that case, the co-defendant had unsuccessfully challenged his arrest. Correct. And did not raise the issue in his direct appeal. And that court specifically stated that we have no reason to doubt his arrest. Here we have no indication as to the circumstances of Samson's arrest. Right. Actually, I think we have a stronger case because in our case, the defendant in this, the co-defendant in this case waived his right to challenge his arrest in this case. There's no basis whatsoever to find that there was, that the co-defendant was arrested illegally in this case. The only thing that the defendant has pointed to is the fact that the co-defendant was arrested around the same time in the same general area as the defendant. And that's not enough to show the legality or the illegality of the co-defendant's search, the co-defendant's arrest. But what we're asking this court to do is find that the legality or the illegality of the co-defendant's arrest is irrelevant in determining the presence of intervening circumstance. We're asking this court to find that if you find that the intervening circumstance, whatever it should be, affects a voluntary response from the defendant, that's the end of the question. Then as far as the legality or the illegality of the co-defendant's arrest, that's covered under the fourth factor that is outlined in brown, which is the degree of flagrancy of the police misconduct. Looking at the facts in this case, despite the defendant's attempts to characterize the police officer's action in the worst possible light, there is no evidence the defendant's subsequent statement was the result of any police misconduct, much less flagrant misconduct. The police had probable cause to arrest the defendant where he was identified by the victim at the scene. Even if this court were to find that there was no probable cause to arrest, since the police officer's conduct in the present case amounted nothing more to the officer's failure to recognize the imprecise line that exists between probable cause and reasonable suspicion, that kind of behavior does not amount to police misconduct. The people's argument is also consistent with the purpose and the goal of the exclusionary rule. The doctrine of attenuation exists in order to calculate the societal cost, which is the loss of incriminating evidence in relation to the policy reasons behind the exclusionary rule itself, which is the deterrence of future police misconduct. Defendant's argument that his confession should be excluded because it might have been encouraged by a co-defendant's statement obtained in violation of the co-defendants' Fourth Amendment rights simply does not advance the policy reasons behind the exclusionary rule. And I'd like to back up for a moment and also respond to defendant's arguments regarding the decision in COP. In COP there's actually a lot of factual distinctions between that case and our case. In COP you have a 17-year-old who was abducted shirtless, shoeless in the middle of the night from his home and taken down to the police station for questioning. Clearly officers knew in that case that they did not have probable cause. The conduct of the officers in this case is obviously distinguishable when, as I said previously, the officers in this case merely did not recognize the imprecise line that exists between probable cause and reasonable suspicion. Also in COP only one factor was established in that case, and that was the fact that the defendant had been Mirandized prior to his statement. There's another distinction. In that case the State did not ask the court to find that there was the presence of, that the confrontation with the brother's confession constituted an intervening circumstance. In fact, that was sent back for that specific purpose in order to determine, for the State to introduce more evidence to establish the presence of intervening circumstances in this case. You cannot find in that case what the defendant is actually asking this court to do, is look at a negative and find a positive. You can't do that. You can't find an implicit decision based on the United States Supreme Court's decision in COP. As far as the defendant's reliance on the decisions in Taylor and in Franklin, in Taylor the defendant was confronted with his own fingerprints and then he received a visit from his girlfriend and a friend. And what actually in Taylor, it actually supports our position that it's an exercise of what we have to look at for intervening circumstances, is whether or not the defendant exercised his free will, because in Taylor that's exactly what they did. They found that his visit from the girlfriend was not a sufficient basis to find that he had exercised his free will. And changed his mind and decided to confess to his involvement in this case. As far as the decision in Franklin, the intervening circumstance in that case was a polygraph. And in that case this court found that this did not constitute independent evidence. And obviously because it was tied up with defendant's own arrest. In this case the co-defendant's statement was independent from the defendant's own arrest in this case. It constitutes independent evidence as opposed to evidence that was dependent and obtained as a result of the defendant's arrest in this case. This court in sum should not base its opinion on mere conjecture or mere possibilities. For these reasons and for the reasons stated in the people's brief, we ask this court to reverse the judgment in Hopkins 1 and in the alternative to affirm the judgment in Hopkins 2 and affirm the defendant's convictions and sentences. Thank you. My understanding was with respect to the probable cause it's an additional basis to affirm the judgment in Hopkins 2. Correct. And I guess you're just saying it in a different way, reverse the judgment in Hopkins 1. I mean we do have judgment lines with respect to what we do at the end of this and Hopkins 1 isn't before us, right? You would agree that Hopkins 1 was not appealed. Correct. Hopkins 1 was not appealed. So another way of saying what you're saying is find that there was probable cause and use that as an additional basis for affirming or find that the Hopkins 2 court that found that it was sufficiently attenuated affirm on that basis. That's correct. Briefly, Your Honors, with regards to the lines of judgment, I guess if this court was to affirm Hopkins 2 on the basis of the probable cause grounds then you'd have an appellate court decision finding no probable cause and a Supreme Court decision finding probable cause sort of independent of each other, of course this being the highest court. That would be that. And just I wanted to correct a couple of things with regards to CALP. Counsel referenced them sending the case back to the trial court for more evidence. They sent it back for evidence of something they didn't have before them. They had the confrontation with the co-defendant's statement, with the brother's statement. They had that before them in CALP right there and they said that that was not attenuating. The state, true, didn't argue it as attenuation probably because the state of Texas may have seen that it was futile to argue that as attenuation because that was distinctly a product of the illegal arrest, that that was an interrogation that stemmed from the illegal arrest. Now with regards to this case, the state is saying we waived the other factors. Well, the appellate court in Hopkins 1 found that those factors did not establish attenuation. Otherwise there would have been no point to remand for the intervening cause factor. If they had established attenuation, the intervening cause would have been irrelevant, but they did not. And with regards to Taylor, counsel discussed briefly that Taylor talked about attenuating factors being something that gave the defendant an opportunity to sort of rationally consider his situation and make his choices, but here we had the police lying to Hopkins, telling them that they already had him because of Samson's statement. Now this being false certainly isn't the sort of thing that would give a person in that situation time to rationally consider the situation he's in. And one smaller matter that I don't think is covered sufficiently in the briefs, counsel was discussing how the dispatch that O'Neill acted on. It mentioned that the suspects were fleeing eastward from the scene of the attempt robbery. Well, Mr. Hopkins was actually found south of the scene of the attempt robbery. So not only was he not on foot, not with the other young black male, and not fleeing, he was sitting, he was actually in a different direction than the dispatch described him as being. What do you mean, was he west of where the event occurred? Well, the suspects were supposedly fleeing eastward on foot, and Mr. Hopkins was south of there. That really doesn't tell you anything, does it? Well, it is an element of the dispatch. Obviously if he had been found east of where the attempt robbery took place, the state would be arguing as corroboration of that dispatch. Look, they looked east of where the attempt robbery happened, we found him east of it. But they didn't find him east of it, didn't find him fleeing, found him south of it in a parked car all by himself. Now, the state talks about Mr. Hopkins, excuse me, turning away from the officer. Well, they're parked at an intersection like, or they're at an intersection like that. Mr. Hopkins is here. Officer O'Neill is here in a fully marked squad car in full uniform. So Mr. Hopkins is sitting here with his headlights on in full view of this police officer. Now, instead of proceeding directly across the intersection, which of course would put his passenger side in front of the police officer and would help obscure him from what the police officer could see, they start turning like this. So that Mr. Hopkins' driver's side window is directly adjacent to the driver's side window of the squad car, putting himself in full view of the police. Now, this is the antithesis of fleeing, this is the antithesis of suspicious behavior. He's essentially putting himself where the police officer could see him. Now, the state talks about him supposedly flinging himself back in the seat, presumably to obscure himself. But what the actual, the trial court actually found was that he sort of, he like reclined with his hands on the steering wheel. The judge didn't find that he flung himself backwards. So again, the state repeatedly says that Mr. Hopkins matched the dispatch. Well, he was by himself. He wasn't with the other young black male. He was in a car. He was not on foot. He was not east of the scene. He was south of the scene. He wasn't fleeing, he was sitting still. And after he was padded down, they knew he wasn't armed. Nonetheless, the officer in this case, he wasn't conducting an investigation. He was conducting an immediate arrest. He didn't even ask Mr. Hopkins any questions based on this very scanty, scanty information that was not corroborated by his own observations. I mean, it was a very bare bones dispatch. There was no description of height, weight, hair, clothing, anything. Mr. Hopkins was a young black male in the vicinity, and that was it. And instead of even conducting just a brief investigatory stop, you know, asking, you know, what's his name, what's he doing, did you just attempt to rob a lady who was walking her dog, they immediately jumped to a full-blown arrest, full-blown custodial arrest based on this information that clearly did not establish probable cause because it was a scanty dispatch to begin with, and the officer himself could see that Hopkins did not match even the most rudimentary details. So should this court choose to revisit the question of probable cause, it should affirm what Hopkins 1 found, which is that there was no probable cause. What about the ID? The ID was after the arrest. In their position that no arrest would kill the ID? This is a new one. As I said, they didn't bring in the results of the ID at the motion of quash hearing. If the arrest was based on the ID, why didn't they say, bring in somebody to say, oh, and Ms. Hadjack identified him, therefore we have probable cause. They didn't do that. They told the court that the arrest happened earlier, and that is what the court found. And that actually brings us to another question. Is this de novo review of this question? No, it is not. This is a finding of historical fact that this court will review for clear error. This is not a de novo issue. The ultimate question, suppression is de novo, attenuation is de novo, but this is a finding of historical fact where the arrest happened, and there is just no basis for there being clearly erroneous findings here. If this was an error, as the state would have you believe, well, it's an error that they planted by arguing it themselves, and they shouldn't be allowed to come back down and say that this was clearly erroneous. But it wasn't erroneous, it was very correct, because you had two police officers with their guns drawn, you had one of the officers telling Mr. Hopkins that they were arresting him, and then you had them going to handcuff him, so he's clearly under arrest. This is no investigatory stop at all. Therefore, we would ask this court to reverse Hopkins 2 on the issue of attenuation and remand this cause for a new trial at which all the tainted evidence of this illegal arrest would not be allowed in. Thank you.